**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ROXANNE KLINE, and ROXANNE KLINE, individually, <br><br> Plaintiffs, <br><br> v. <br><br> DOCS AT THE DOOR, P.C., AJIBOLA AYENI, BANIO KOROMA, FIRAS ZAHWE, GATEWAY HEALTH SYSTEMS, INC., and JOY H. TURNER-AYENI <br><br> Defendants. <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> DOCS AT THE DOOR, P.C., AJIBOLA AYENI, GATEWAY HEALTH SYSTEMS, INC., and JOY H. TURNER-AYENI, <br><br> Defendants. | No. 13 C 7837 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Ajibola Ayeni (hereinafter, "Defendant Ayeni"), a physician, operated a home-visit physician service, Docs at the Door, P.C. (hereinafter, "Docs"), from 2011 to 2015. In 2013, Roxanne Kline, who worked for Docs as a medical assistant, filed this action under the False Claims Act, 31 U.S.C. § 3731, alleging that Ayeni and his company billed the federal Medicare program for services they had not provided. The government intervened in the action, which was stayed for several years while the government pursued federal criminal fraud charges against Defendant Ayeni. Defendant Ayeni has pleaded guilty to those charges and been sentenced, and this court lifted the stay in this case last year.

The government now moves for summary judgment against Defendants Ayeni and Docs. The government argues that Defendant Ayeni's guilty plea in the criminal case resolves the question of liability for both Defendants Ayeni and Docs in this one. Defendants[1] oppose this motion; Defendants contend that the government improperly relies on determinations made at Defendant Ayeni's sentencing hearing rather than the material undisputed facts that were essential to his conviction. As explained below, the court agrees with the government that Defendant Ayeni's guilty plea contains binding admissions that estop him and Docs from denying liability in this case, and therefore grants the government's motion.[2]

## **BACKGROUND**

Congress established the federal Medicare program in 1965 under Title XVIII of the Social Security Act to pay for certain healthcare services for older Americans. (Plaintiff's Statement of Material Undisputed Facts ([109] (hereinafter, "Plaintiff's Statement") ¶ 8.) The program operates through private physicians, clinics, and other healthcare providers, all of which are reimbursed under the Medicare program for the services they provide to Medicare beneficiaries. (*Id.*) To obtain reimbursement for their services, these healthcare providers must apply for and obtain a Medicare provider number. (*Id.*) Among the physician services eligible for reimbursement are home visits and home health services. (*Id.* ¶ 16.) In certain limited circumstances, a physician who certifies that a patient is entitled to receive home health benefits may also seek reimbursement from Medicare for the time the physician spends supervising the home health care provided to the patient by others. (*Id.* ¶ 17.) To bill for that time—known as "care plan oversight"

---

[1] Relator Roxanne Kline (but not the United States) asserted claims against additional defendants, including Firas Zahwe and Banio Koroma. The court granted Zahwe's motion to dismiss for lack of standing [94], and directed Roxanne Kline to show cause why the case should not be dismissed against Defendant Banio Koroma for this reason as well. As she has declined to do so, claims against Mr. Koroma are dismissed. Defendants Gateway Health Systems, Inc. and Joy Turner-Ayeni are not parties to this Motion for Summary Judgment.

[2] Citations to Ayeni's criminal docket (No. 1:17-cr-00533-1) are denoted with an asterisk. All other citations are to the docket in this civil FCA case (No. 1:13-cv-07837).

or "CPO" services—the physician must spend 30 minutes on those services in the calendar month. (Plaintiff's Statement ¶ 19 (citing 42 C.F.R. § 414.39(b)(1); CMS Medicare Benefit Policy Manual (Pub. 100-02), Ch. 15, Sec. 30.G; Medicare Claims Processing Manual (Pub. 100-04), Ch. 12, Sec. 180.).)

Relator Roxanne Kline filed the original action in this case pursuant to 31 U.S.C. § 3730(b), under the False Claims Act ("FCA"), 31 U.S.C. § 3731. Her *qui tam* complaint alleged that Ayeni, Docs at the Door, P.C. ("Docs"), and others submitted or caused to be submitted false claims to Medicare for home visiting physician and home health services and made false statements material to those claims. (Pl.'s Complaint [1] at 1–3.) As noted, the government intervened, and this civil action was stayed pending resolution of the related criminal case.

**Criminal Proceedings / Ayeni's Guilty Plea**

Defendant Ayeni was charged with theft or embezzlement in connection with a health care benefit program, in violation of 18 U.S.C. § 669. The case proceeded to trial on August 19, 2019, but at the conclusion of the evidence, on August 22, 2019, Defendant Ayeni withdrew his not-guilty plea and entered into a written plea agreement with the government. Ayeni pleaded guilty to a single misdemeanor count of theft or embezzlement in connection with a health care benefit program—a count alleging a false claim resulting in a Medicare loss of $87.85. (*74, *75, *76, *77, *78, *79, *80.)

Defendant Ayeni's plea agreement sets forth the elements of the offense conduct in detail. Specifically, from 2011 through June 2015, Ayeni owned and managed Docs, a home-visit physician company located in Matteson, Illinois. (Plea Agreement [*80] ¶ 6.) During this time, Docs was an enrolled Medicare provider, and Defendant Ayeni identified himself to Medicare as the "authorized official" for Docs. (*Id.*) He contracted with physicians to perform home visits for patients, paying those physicians a set fee per home visit completed. (*Id.*) He then instructed staff to submit claims to Medicare for home visits performed by physicians he employed through Docs, along with claims for CPO services for each of those patients. (*Id.*) Defendant Ayeni gave

3

these instructions despite knowing that none of the physicians actually spent an extra thirty minutes performing CPO services. (Plea Agreement [*80] ¶ 6.) Defendant Ayeni also instructed individuals who worked for him at Docs to complete "CPO Logs," falsely stating that the physicians employed at Docs had performed care plan oversight. (*Id.*)

In pleading guilty, Ayeni acknowledged the elements of the charged offense: that he (1) owned Docs at the Door; (2) was the company's authorized official in connection with its Medicare enrollment; (3) knowingly instructed others to submit false claims for payment of care plan oversight services to Medicare on behalf of Docs; and (4) instructed others to create false supporting documentation for those services. (*Id.*) Ayeni specifically also admitted that "from 2011 through June 2015, Medicare paid approximately $523,600 to Docs at the Door as the result of 4,367 false claims [that Ayeni] caused to be submitted by Docs at the Door for purported care plan oversight services." (Plea Agreement [*80] ¶ 6.)

Judge Gettleman of this court conducted a sentencing hearing on September 10, 2020, where defense counsel presented argument in an unsuccessful effort to minimize the amount of loss. (*See* Sentencing Transcript [*124].) The court sentenced Defendant Ayeni to six months in prison and ordered him to pay $523,600 in restitution—the total amount paid by Medicare as a result of Defendant Ayeni's 4,367 false claims. (*Id.*) Defendant Ayeni appealed his sentence to the Seventh Circuit but withdrew the appeal. Upon the resolution of the criminal case, this court lifted the stay, and the parties resumed this litigation. (Jan. 27, 2022 Order [85].) The government now seeks summary judgment, arguing that Ayeni's guilty plea conclusively establishes civil liability on the part of Ayeni and Docs.

## **DISCUSSION**

To combat fraud, the False Claims Act imposes civil liability on any party who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the United States]" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" paid by the government. 31 U.S.C.

4

§ 3729(a)(1)(A)–(B). The statute also provides a *qui tam* enforcement mechanism to allow a private party (*i.e.*, a relator) to bring a lawsuit on behalf of the government and against an entity to recover money the government paid as a result of fraudulent claims. 31 U.S.C. § 3730 (b)(1). The *qui tam* complaint is initially filed *in camera* and remains under seal until the government decides whether it will intervene and proceed with the action itself. 31 U.S.C. § 3730 (b)(2).

Having intervened in this action, the United States seeks summary judgment in its favor and an award of treble damages and civil penalties. As well-recognized, summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022) (internal citations omitted). When considering a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022).

Defendants Ayeni and Docs at the Door suggest that there are disputed facts and a need for investigation or discovery. The record defeats that suggestion, however. Pursuant to Local Rule 56.1(b)(3)(C), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Though represented by counsel, Defendants[3] here failed to respond to the government's statement of material facts; those material facts are thus deemed admitted. And, as the government asserts, Defendant Ayeni admitted these facts in the plea agreement he signed. In that plea agreement, Defendant Ayeni admitted to knowingly and willfully embezzling, stealing, and intentionally misapplying moneys, funds, and assets of a healthcare benefit program. He instructed others to submit claims to Medicare for CPS services knowing that that none of the physicians he employed

---

[3] Both Defendant Ayeni and Docs are represented by the same lawyer and are herein after referred to as "Defendants".

5

actually provided an additional thirty minutes per patient per month. Then, he instructed individuals who worked for him at Docs at the Door to complete false CPO logs, which purported to document time spent by the physicians he employed at the Docs on care plan oversight. Defendant Ayeni pleaded guilty to a single payment of approximately $87.85 made by Medicare to Docs at the Door for care plan oversight services that were neither provided to nor received by the purported patient in or around May 2015. He also specifically acknowledged that from 2011 through June 2015, Medicare paid approximately $523,600 to Docs at the Door as the result of 4,367 false claims he caused to be submitted by Docs for purported CPO services. Having made those admissions under oath, the government contends, Ayeni and Doc are estopped from denying liability under both statutory and common law.

### A. FCA Estoppel Provision

The government argues, first, that because Defendant Ayeni's plea agreement satisfies the essential elements of the FCA, Defendant Ayeni is estopped from denying liability under the FCA estoppel provision.

The United States is on solid ground here. The FCA contains an express estoppel provision stating that.

> [n]otwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) or section 3730.

31 U.S.C. § 3731(e). The plain language of this statute confirms that Defendants may not deny the essential elements of the charges against Ayeni, who operated Docs at the Door.

Defendants have not meaningfully challenged the import of this language. As the court understands their argument, they suggest that the "offense" whose elements they are estopped from denying is limited to a single claim resulting in a Medicare payment of $87.85. Defendants characterize the government's claim in this case as resting not on facts set forth in the plea

6

agreement but instead on findings made by Judge Gettleman when he sentenced Ayeni. The argument has little traction, however, and neither the facts nor the case law Defendants cite support it. First, the facts: the government's motion for summary judgment does not rest on Judge Gettleman's sentencing findings; it rests on admissions made by Mr. Ayeni when he pleaded guilty.[4]

Defendants have cited several cases for their argument that findings made by Judge Gettleman at sentencing do not support estoppel in this case. Because the government's motion rests on Ayeni's sworn plea—not the sentencing proceeding—the cases Defendants cite provide no real support for their argument. They cite United States v. Zaky, No. 3:12-CV-01661-WWE, 2015 WL 4603405, at 2* (D. Conn. July 30, 2015), where the defendant was charged with 14 counts of health care fraud and found guilty by a jury of all 14. In the subsequent False Claims Act case, awarded a civil penalty basedon each of the 14 counts. Specifically, the court stated that "[t]he conduct for which Zaky was convicted is the same as that alleged in the instant complaint." Enforcing the FCA estoppel provision, the court granted summary judgment against Zaky on all of the claims for which Zaky had fraudulently billed Medicare. Zaky, 2015 WL 4603405, at *3. It this case, there was no jury verdict, but Defendant Ayeni made sworn factual admissions in his plea agreement about offense conduct vastly in excess of the single claim. As the government notes in its reply brief (Government Reply [121] at 7), there is no indication in the Zaky opinion that the defendant had made any false claims other than the 14 with which he was

---

[4] Because the government is not relying on Judge Gettleman's sentencing findings, the court is unmoved by Defendants' contention that the government has somehow waived its right to invoke collateral estoppel arising from those findings. (Defendants' Opposition [118] at 7.) Nor does the court need to weigh in on the degree to which findings made in federal sentencing proceedings may have collateral estoppel effect in other criminal prosecutions. See United States v. Clark, 906 F.3d 667, 671 (7th Cir. 2018) (declining to decide whether a criminal history determination in one case was binding on the court in a later sentencing); United States v. Ellis, 622 F.3d 784, 797 n.5 (7th Cir. 2010) as amended (Sept. 27, 2010) (declining to decide whether a favorable finding made by the judge in an earlier sentencing had estoppel effect, but observing that estoppel likely "applies more narrowly in the criminal context than the civil context")

charged. Ayeni, in contrast, admitted that, in his role operating Docs at the Door, he knowingly caused the submission of more than 4,000 other false claims.

Defendants also cite to other cases where courts declined to extend the collateral estoppel doctrine to sentencing findings, but these, too, have little relevance here. In *Securities and Exchange Commission v. Monarch Funding Corp.*, 192 F.3d 295, 299-300 (2d Cir. 1999), defendant had been convicted of obstruction of justice, but acquitted on securities fraud charges; the sentencing judge nevertheless found, by a preponderance of the evidence, that defendant had in fact engaged in securities fraud. In a subsequent civil trial brought by the SEC, the district court found defendant estopped to deny having engaged in securities fraud. The Second Circuit reversed that application of collateral estoppel, but explicitly declined defendant's invitation to hold that "sentencing findings should never be given preclusive effect in civil litigation." *Id.* at 297. The court in *Securities and Exchange Commission v. Afriyie*, 788 F. App'x 59, 61 (2d Cir. 2019) declined to reach the question of whether sentencing court findings had preclusive effect, because the SEC had presented ample additional unrebutted evidence of defendant's liability for securities fraud. *Maciel v. Commissioner of Internal Revenue*, 489 F.3d 1018 (9th Cir. 2007) also has no obvious relevance here; in that case, defendant had pleaded guilty to criminal tax charges, but the sentencing judge in his criminal case concluded that defendant had not fraudulently intended to evade the payment of taxes. Defendant argued that this favorable determination estopped the IRS from asserting, in a civil case, that he had acted fraudulently by failing to report income, but the Ninth Circuit affirmed the Tax Court's fraud findings, holding that it is "presumptively improper for a court to give preclusive effect to the findings of a sentencing court during subsequent civil litigation." *Id.* at 1023.

In the end, any debate about the preclusive effect of findings made by a sentencing judge is beside the point. The United States has not argued, as Defendants suggest, that collateral estoppel "should be extended to the facts found at Dr. Ayeni's sentencing." (Defendants' Response [118] at 6.) And Judge Gettleman in this case made no new factual findings at

8

sentencing. To the contrary, when Defendant Ayeni attempted at sentencing to dispute the number of false claims he made, Judge Gettleman rejected the effort, stating, "[t]here is a plea agreement where the defendant has agreed to certain facts, and that's one of the facts he agreed to." (Plaintiff's Statement ¶ 21; Sentencing Hearing [109-1] at 11:18–21.) As Judge Gettleman did, this court concludes that Ayeni is legally bound by his admissions to the conduct underlying all of the false claims to which he admitted in his plea agreement, not merely the one at issue on the single-count misdemeanor to which he pleaded guilty. Thus, his effort to limit the amount of damages he owes in this case to the amounts relating to that single claim fails.

This court is not the first one to reach such a conclusion. The defendant in *United States v. Harris*, No. 06 C 2996, 2008 WL 4324032, at *1 (N.D. Ill. Jan. 31, 2008), *aff'd*, 303 F. App'x 348 (7th Cir. 2008) made an argument similar to the one Defendants assert here. In *Harris*, the court held that, while the defendant pleaded guilty to a single false claim, he admitted in his plea agreement that he had, in fact, submitted other false claims and was properly estopped from challenging those finding in the civil proceeding against him. (*Id.*)

*United States v. Aleff*, 772 F.3d 508 (8th Cir. 2014) and *United States ex rel. Chepurko v. e-Biofuels, LLC*, No. 14-cv-377, 2020 WL 2085071 (S.D. Ind. Apr. 30, 2020) provide further support for this conclusion. In *Aleff*, the Eighth Circuit affirmed a finding that defendants' guilty pleas to charges of conspiracy to defraud the United States established the essential elements of an FCA claim despite findings by the sentencing judge that one of the defendants had acted with "significantly reduced mental capacity"—that is, even findings favorable to the defendant at sentencing do not defeat the collateral estoppel effect of the defendant's guilty plea. *Aleff,* 772 F.3d at 510. The defendants in *e-Biofuels* had pleaded guilty to criminal charges of wire fraud and conspiracy in a scheme to defraud biodiesel buyers. *e-Biofuels*, 2020 WL 2085071, at *4. In a subsequent civil action, the government sought penalties for false claims relating to transactions in the renewable energy industry. The district judge concluded that the relevant issues and facts relevant to the False Claims Act were "actually and fully litigated in the previous criminal matters

9

through plea agreements and stipulated factual bases," and estopped defendants from challenging their liability in the False Claims Act case. I*d.* at *10.

In his plea agreement, Ayeni admitted to submitting 4,367 fraudulent claims to Medicare. That figure is also supported by the uncontroverted Statement of Facts that the government submitted to this court. There is nothing improper about the government's reliance on that agreement to establish the essential elements of the FCA offense, and Defendant Ayeni is estopped from contradicting statements he made under oath. *Harris*, 2008 WL 4324032, at *1 (stating that plea agreements are judicial admissions and "unless defendant is suggesting that she lied in her plea . . . the admission compels entry of judgment").

**B.    Common Law: Collateral Estoppel and Vicarious Liability**

Apart from the statutory estoppel provisions, the government contends that Ayeni is collaterally estopped from denying conduct from his plea agreement as a matter of common law. Again, the court agrees. Collateral estoppel applies when (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 819–20 (N.D. Ill. 2002) (citing *Herzog v. Lexington Twp.*, 167 Ill.2d 288, 657 N.E.2d 926, 929 (1995)).

Each of those elements is present in this case. The same wrongdoing charged in the criminal case—fraudulent claims submitted to Medicare—is at issue here. The court in that criminal case reached a final judgment on the merits when Defendant Ayeni pleaded guilty and later withdrew his appeal to the Seventh Circuit. (*See* Plaintiff's Statement ¶ 41.) Lastly, Defendant Ayeni was clearly a party in his own criminal case.

As the government contends, Ayeni's admitted criminal conduct supports a finding of civil liability against Docs at the Door, as well. The government so argued in its summary judgment submissions, and Defendants' response brief makes no mention of this issue. Docs is a small

business operated by Ayeni, who, as "authorized official" for Docs, had legal authority with respect to the Medicare program and was responsible to assure that Docs "fully abide[d] by the statutes, regulations, and program instructions of the Medicare programs." 42 C.F.R. § 424.520. Docs is vicariously liable for Ayeni's actions based upon the privity between the two parties. Accordingly, under both the FCA estoppel provision and the common law doctrine of collateral estoppel, both Defendants are precluded from denying facts that Defendant acknowledged under oath in his guilty plea.

## CONCLUSION

Under the four-pronged test set forth in *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716 (7th Cir. 2017), the United States is entitled to judgment as a matter of law. As set forth in the government's unrebutted Statement of Facts, the evidentiary record establishes that Defendant Ayeni directed staff of Docs at the Door to make knowingly false statements in order to receive money from the Medicare program, and those false statements were material to the government's decision to pay the false claims. (*See* Plaintiff's Statement ¶¶ 29–36.) Defendant Ayeni acknowledged under oath in his guilty plea that Medicare paid approximately $523,600 to Docs at the Door as the result of 4,367 false claims he caused to be submitted by Docs at the Door for purported care plan oversight services. (*Id.* ¶ 37.) These false claims were material to the government's decision to pay these false claims. Plaintiff's motion for partial summary judgment [107] is therefore granted. The United States is invited to submit, within 14 days, a proposed judgment order awarding treble damages and civil penalties.

ENTER:

Dated: March 24, 2023

REBECCA R. PALLMEYER
United States District Judge

11